# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLPR, LLC, et al., <br><br> Plaintiffs, <br> vs. <br> THE SAN DIEGO UNIFIED PORT DISTRICT, et. al., <br><br> Defendants. | CASE NO. 06-CV-1327 W (POR) <br><br> **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS (DOC. NO. 61 & 64)** |

Pending before the Court are motions to dismiss the Second Amended Complaint ("SAC") filed by the San Diego Unified Port District (the "Port District") (Doc. No. 64), and collectively by the United States Army Corps of Engineers (the "Army Corps") and United States Navy (the "Navy") (collectively, the "Federal Defendants") (Doc. No. 61). The Court decides the matters on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d.1). For the following reasons, the Court **DENIES** the motions.

//
//
//
//

## I. BACKGROUND

Plaintiffs own shorefront property in Coronado, California. (SAC ¶ 10.) Plaintiffs' properties are directly adjacent to sections of the San Diego Bay known as the Central Navigation Channel ("Channel") and the Naval Air Station North Island Turning Basin ("Turning Basin"). (*Id.* ¶ 44.)

According to the SAC, in order to facilitate home-porting of additional nuclear aircraft carriers, Defendants dredged the Turning Basin in approximately 1998, and again in approximately 2002. (*Id.* ¶ 16.) After the first dredging operation, defendant Army Corps issued a report evaluating the impact of the dredging activities on the Coronado shoreline. (*Id.* ¶ 17.) The report concluded that within ten years, erosion caused by the dredging will begin to undermine structures along the shoreline where Plaintiffs' properties are located. (*Id.*) The report further provides that if "there is no organized effort to protect this portion of the shoreline," the foundations of Plaintiffs' houses will begin to erode in approximately 10 years, thereby rendering yards unstable and placing structure in jeopardy. (*Id.* ¶ 21.)

After the report was issued, in approximately October 2004, Plaintiffs allege that the Port District and Army Corps began another dredging operation in the Channel in order to improve the efficiency of commercial shipping operations in San Diego Bay. (*Id.* ¶ 23.) The dredging project ended in February 2005. (*Id.*)

On or about July 4, 2005, certain Plaintiffs discovered that the dredging undermined the lateral support of their land and compromised the structural integrity of a riprap barrier on the shoreline. (*Id.* ¶ 25.) On February 2, 2006, Plaintiff SLPR filed a complaint in the San Diego Superior Court against the Port District. On May 26, 2006, SLPR filed a First Amended Complaint adding the Army Corps as a defendant. On June 26, 2006, the Army Corps removed the action to this Court.

On December 5, 2007, Plaintiffs filed a SAC adding the Navy as an additional defendant. The motions to dismiss followed.

## II. LEGAL STANDARD

The Court must dismiss a cause of action if the cause of action fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth of all factual allegations and must "construe them in the light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court recently explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964–65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into a motion for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. South Bay Beer

1 Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) abrogated on other grounds by
2 Astoria Fed. Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).[1]

### III.   PORT DISTRICT'S MOTION TO DISMISS

The Port District challenges Plaintiffs' first and second causes of action for nuisance and violation of California Civil Code § 832, respectively.  For the reasons addressed below, the Court **DENIES** the Port District's motion.

#### A.   Civil Code § 3482 Does Not Bar Plaintiffs' Nuisance Claim.

Civil Code § 3482 provides that "[n]othing which is done or maintained under the express authority of a statue can be deemed a nuisance." The Port District asserts that the dredging projects are authorized by several statutes, including the Commerce Clause (Art. 1, Sec. 8, Cl.3), the River and Harbor Act (33 U.S.C. §§ 1, 577) and California Public Resource Code § 30705(a)(1).  Because the dredging projects are authorized by statute, the Port District contends that the nuisance claim must be dismissed under section 3482. (*Port Dist.'s Mem. of P. & A.* at 5:9–11.)  Plaintiffs argue that although the dredging projects are statutorily authorized, section 3482 is inapplicable because the statutes do not authorize dredging that causes damage to Plaintiffs' property.  The Court agrees with Plaintiffs.

The California Supreme Court has "consistently applied a narrow construction to section 3482 and to the principle therein embodied." Friends of H Street v. City of Sacramento, 20 Cal.App.4th 152, 160 (1993) (quoting Greater Westchester Homeowners Assn. v. City of Los Angeles, 26 Cal.3d 86, 100 (1979)).  For section 3482 to apply, the acts complained of must be "authorized by the *express terms* of the statute under which the justification is made, *or by the plainest and most necessary implication* from the powers expressly conferred, *so that it can be fairly stated that the legislature*

---

[1] Based on this standard, the Court **GRANTS** Defendants' request for judicial notice.

1 *contemplated the doing of the very act which occasions the injury.*" Id. (quoting Hassell v.
2 San Francisco, 11 Cal.2d 168, 171 (1938) (emphasis in original)).

3 In Varjabedian v. City of Madera, 20 Cal.3d 285 (1978), the city argued that a
4 nuisance claim based on septic smells emanating from a nearby sewage treatment facility
5 was barred under section 3482 because construction of the facility was statutorily
6 authorized. But one of the goals in constructing the plant was to eliminate septic smells,
7 and none of the statutes authorizing construction mentioned the "possibility of noxious
8 emanations from such facilities." Id. at 292. Based on these facts, the California
9 Supreme Court explained that it could not find "that such odors were authorized by the
10 'plainest and most necessary implication' from the general powers there conferred, or
11 that it can be fairly said that the Legislature contemplated, to any extent, the creation
12 of a malodorous nuisance when it authorized sewage plant construction." Id.
13 Accordingly, the Court held section 3482 inapplicable because "the statute did not
14 *expressly* authorize odors emanating from the plant. . . ." Id. at 291.

15 In Greater Westchester, the proprietor of Los Angeles International Airport
16 argued that a nuisance claim based on aircraft noise was barred under section 3482.
17 Although aviation is sanctioned by various federal and state statutes, the California
18 Supreme Court held that section 3482 did not apply based, in part, on competing state
19 and federal legislation that preserved "both the authority and responsibility of an airport
20 proprietor to acquire adequate noise easements and to institute reasonable noise
21 abatement procedures. . . ." Id., 26 Cal.3d at 102.

22 Here, none of the statutes Defendants cite that authorize dredging mention
23 shoreline erosion. Additionally, Plaintiffs argue that the Coastal Zone Management Act
24 ("CZMA"), 16 U.S.C. § 1451(c) and California Public Resource Code § 30253 require
25 protection from shoreline erosion. (*Pl.'s Opp'n to Port Dist.'s Mot. to Dismiss* at 7:1–6.)
26 The Port District does not dispute that these statutes require protection from shoreline
27 erosion, but instead asserts that Plaintiffs' statutes are "merely general authorization
28 statutes and do not support Plaintiffs' claims." (*Port Dist.'s Reply Mem.* at 4:3–4.)

1    But, similar to the circumstances in Varjabedian and Greater Westchester, the
2 Court is confronted with statutes that authorize dredging and others that require
3 protection from shoreline erosion.  And as the moving party, the Port District has not
4 identified any statutory language authorizing dredging that causes shoreline erosion.
5 Accordingly, the Court finds section 3482 does not apply to this case.

6

7    **B.    The Port District has Failed to Establish the Boundaries of its Property.**
8    The Port District next argues that the nuisance claim must be dismissed because
9 the 1998 and 2002 dredging projects occurred outside its property lines, and thus the
10 Port District had no jurisdiction over the Navy's dredging.  In support of this argument,
11 the Port District contends that exhibits 1–4 attached to the motion to dismiss establish
12 that the Port District's "jurisdiction relevant to this case" does not include the Turning
13 Basin and Channel.  (*Port Dist.'s Mem. of P. & A.* at 3:18–20.)
14    Exhibit 1 consists of the cover page and two maps from the Port District's 2007
15 Tidelands Map Book.  But neither map identifies Plaintiffs' bayside properties, the
16 Turning Basin, the Channel, or the boundaries of the Port District's property.  Nor does
17 the Port District identify those portions of exhibits 2–4 that are relevant in establishing
18 these different areas in the San Diego Bay.
19    To the extent the Port District believes the attached exhibits support its
20 argument, the Port District must identify the relevant portions of the exhibits.  Even on
21 a summary-judgment motion, the "district court may limit its review to . . . those parts
22 of the record specifically referenced therein."  Carmen v. San Francisco Unified School
23 Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).  The court is not obligated "to scour
24 the record" in search of evidence supporting the moving party's contentions.  Keenan
25 v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).
26    Because the Port District has not established that the dredging occurred outside
27 of its jurisdiction, its motion to dismiss is denied.
28

### C. Violation of Civil Code § 832.

California Civil Code § 832 provides in relevant part:

> Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction or improvement. . . .

The Port District argues that Plaintiffs' claim for violation of section 832 should be dismissed for several reasons.

First, the Port District contends that dismissal is warranted because Plaintiffs cannot establish that the dredging was performed on Port District property. (*Port Dist.'s Mem. Of P. & A.* at 7:20–23.) But as addressed above, the Port District failed to establish the boundaries of its property. Accordingly, the Court must accept as true Plaintiffs' allegation that the adjoining land was owned by the Port District.

The Port District next argues that section 832 does not apply where, as here, the lateral support is from adjacent submerged land. But the statute does not include such a limitation. Nor has the Port District cited any California case limiting the statute's applicability to lateral support from adjacent dry land. Accordingly, the Port District has failed to establish that section 832 does not apply.

Finally, citing Holtz v. Superior Court, 3 Cal.3d 296 (1970), the Port District argues in its moving papers that the California Supreme Court held that section 832 does not apply to damages resulting from a public agency's public improvement project. However, in its Reply, the Port District appears to concede that Holtz is not applicable because it is an inverse condemnation case. The Court agrees.

For these reasons, the motion to dismiss the section 832 claim is denied.

### IV. FEDERAL DEFENDANTS' MOTION TO DISMISS

The Federal Defendants move to dismiss Plaintiffs' fourth and fifth causes of action for violation of the Administrative Procedure Act ("APA"). For the reasons stated below, the Court **DENIES** the Federal Defendants' motion.

### A. **Plaintiffs' Interests Are Arguably Within The CZMA's Zone Of Interests**

Plaintiffs seek judicial review under the APA of the Federal Defendants' 1998 and 2002 dredging operations based on the Federal Defendants' alleged non-compliance with the CZMA. (SAC ¶¶ 85, 97.) The CZMA does not create a private right of action. See, e.g., Town of N. Hempstead v. Vill. of N. Hills, 482 F. Supp. 900, 905 (E.D.N.Y. 1979) ("It is clear that CZMA . . . is neither a jurisdictional grant, nor a basis for stating a claim upon which relief can be granted."). Accordingly, Plaintiffs must pursue their claim via the APA, which provides a limited waiver of sovereign immunity to litigants seeking non-monetary relief from federal agency action. 5 U.S.C. § 702; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1200 (9th Cir. 2004) ("If statutory standing is not explicitly provided in the text of a statute, a plaintiff challenging federal administrative action looks to [the APA]. . . .").

In order to state a claim under the APA, Plaintiffs bear the burden of showing that their interests are within the relevant "zone of interests" protected or regulated by the statute in question, here the CZMA. Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970).

Congress enacted the CZMA to encourage coastal states to enact their own coastal management programs. See S. Rep. No. 92-753, at 1 (1972), as reprinted in 1972 U.S.C.C.A.N. 4776, 4776 (The CZMA "has as its main purpose the encouragement and assistance of States in preparing and implementing management programs to preserve, protect, develop and whenever possible restore the resources of the coastal zone of the United States."). The Federal Defendants argue that Plaintiffs' interests are not within the CZMA's zone of interests. (*Federal Defs.' Mem. of P. & A.* at 5:14–15.) According to the Federal Defendants, standing under the CZMA is limited to states and environmental groups—entities which have identical interests in maintaining the environmental integrity of the coastal zone. (*Id.* at 8:5–20.) The

1  Federal Defendants claim that, as individuals suing in their private capacity, Plaintiffs'
2  interests are not within the zone of interest of the CZMA because Plaintiffs are only
3  interested in saving the shoreline abutting their own backyards. (*Id.* at 8:23–24.)

4  The zone of interest test "is not meant to be especially demanding; in particular,
5  there need be no indication of congressional intent to benefit the would-be plaintiff."
6  Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399–400 (1987) (footnote omitted). The
7  relevant inquiry is whether the plaintiff's asserted interest is "arguably within the zone
8  of interests" protected by the law that the plaintiff claims the defendant violated. Nat'l
9  Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488 (1998).
10 "Where statutes are concerned, the trend is toward enlargement of the class of people
11 who may protest administrative action." Data Processing, 397 U.S. at 154. The zone
12 of interests test "denies a right of review [only] if the plaintiff's interests are so
13 marginally related to or inconsistent with the purposes implicit in the statute that it
14 cannot reasonably be assumed that Congress intended to permit the suit." Clarke, 479
15 U.S. at 399. Whether a particular plaintiff's interest falls within a particular statute's
16 zone of interests "is to be determined not by reference to the overall purpose of the Act
17 in question . . . , but by reference to the particular provision of law on which the plaintiff
18 relies." Bennett v. Spear, 520 U.S. 154, 175–76 (1997).

19 The Ninth Circuit has not squarely addressed the question of whether private
20 individual plaintiffs have prudential standing to sue under the CZMA. However, in
21 California v. Watt, the Ninth Circuit extended prudential standing under the CZMA
22 to environmental groups because "[t]he CZMA issues the environmental groups sought
23 to raise were identical to those raised by the State of California. . . ." Id., 683 F.2d 1253,
24 1271 (9th Cir. 1982), rev'd on other grounds sub nom. Secretary of the Interior v.
25 California, 464 U.S. 312 (1984).

26 The Ninth Circuit subsequently dealt with whether municipalities had standing
27 under the CZMA. Relying on Watt and the statute's text, the Ninth Circuit held "that
28 adversely affected local governments are within the zone of interests of the CZMA, as

parties adversely affected or aggrieved by an improper consistency determination." City of Sausalito, 386 F.3d at 1201 (internal quotation marks omitted). Thus, although municipalities take no part in making or concurring in CZMA consistency determinations, municipalities do have prudential standing to challenge improper consistency determinations through the APA. Id.

The particular provision of the CZMA on which Plaintiffs rely—16 U.S.C. § 1456—requires that federal agency activities affecting the coastal zone "be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved state management programs." (SAC ¶¶ 83, 93.) Plaintiffs assert that the relevant state policy is reflected in California's approved coastal management plan, the California Coastal Act ("CCA"). Cal. Pub. Res. Code §§ 30000–30900. California Public Resources Code § 30253(2) requires that "[n]ew development shall . . . [a]ssure stability and structural integrity, and neither create nor contribute significantly to erosion, geologic instability, or destruction of the site or surrounding area or in any way require the construction of protective devices." Because the Federal Defendants' dredging caused erosion, Plaintiffs contend that the Federal Defendants violated the CZMA by not carrying out the dredging in a manner consistent with California's policy.

The Federal Defendants argue that because the SAC "centers on [Plaintiffs'] backyards" and seeks a solution "necessarily limited to their own, private needs," Plaintiffs' interests are not consistent with the state's interest. (*Federal Defs.' Mem. of P. & A.* at 8:22–27.) But simply because the dispute at hand only involves Plaintiffs' property does not mean Plaintiffs' interests conflict with the state's interest. To the extent that Plaintiffs' attempts to prevent further shoreline erosion are consistent with California Public Resource Code, the Court cannot find that Plaintiffs' interests are only "marginally related to or inconsistent with" California's interest in maintaining the environmental integrity of the coastal zone. Clarke, 479 U.S. at 399.

The Federal Defendants also claim that Plaintiffs' interests are opposed to California's interests because Plaintiffs are currently suing the Port District as representatives of the state. (*Federal Defs.' Reply Mem.* at 7:15–18.) However, the question is not whether the Plaintiffs' interests are consistent with state agency actions; rather, the relevant question is whether Plaintiffs' interests are within the zone of interests reflected by the CZMA and California's statutory implementation of the CZMA, the CCA. See City of Sausalito, 386 F.3d at 1201 (holding that municipality had standing to challenge consistency determination in which state agency previously concurred). As discussed above, Plaintiffs seek to protect their properties from further shoreline erosion—a goal consistent with the policy reflected in California Public Resources Code § 30253.

Taking Plaintiffs' factual allegations as true and construing them in the light most favorable to the non-moving party, the Court cannot conclude on this record that Plaintiffs' interests do not fall within the CZMA's zone of interests. Gompper, 298 at 895 (9th Cir. 2002).[2]

### B.  Plaintiffs' Claims Are Ripe For Adjudication

The Federal Defendants also assert that Plaintiffs' claims are not yet ripe for adjudication. (*Federal Defs.' Mem. of P. & A.* at 9:5–6.) The Federal Defendants contend that Plaintiffs will not suffer if the Court withholds judicial review at this time, because Plaintiffs' residences will not be in immediate jeopardy until 2015–2020. (*Id.* at 9:17–18.) Additionally, the Federal Defendants contend that the presence of an

---

[2] The Court notes that, in so holding, it necessarily rejects the conclusion of Serrano-Lopez v. Cooper, 193 F. Supp. 2d 424 (D.P.R. 2002), the only reasoned decision which the Court has found to squarely address the issue of whether private individuals can achieve prudential standing to sue under the CZMA through the APA. The court in Serrano-Lopez held that "[t]he only party that could potentially bring its concerns, interest, and potential injuries within the zone of interests of the CZMA" was the Puerto Rican government, through the Puerto Rican Planning Board. Id. at 434. This conclusion does not square with Ninth Circuit law extending standing to municipalities and environmental groups. See e.g., City of Sausalito, 386 F.3d at 1201; Watt, 683 F.2d at 1271.

ongoing environmental impact study renders the record unfit for review. (*Id.* at 9:22–28.)

"Ripeness is a justiciability requirement that seeks to avoid premature litigation of disputes." Buono v. Kempthorpe, 502 F.3d 1069, 1077 (9th Cir. 2007) (citing Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 579–81 (1985)). The ripeness doctrine consists of both Article III and prudential limitations. Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 808 (2003). The prudential component of the ripeness doctrine requires a court to analyze two factors: (1) "the hardship that the party seeking relief will suffer from withholding judicial action," and (2) "the fitness of the issues in the record for judicial review." Buono, 502 F.3d at 1079. The judicial record is "fit for [review] if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Standard Alaska Production Co. v. Schaible, 874 F.2d 624, 627 (9th Cir. 1989).

Here, Plaintiffs' claims satisfy both components of the prudential ripeness doctrine. Federal Defendants assert that Plaintiffs will not suffer hardship if the Court withholds judicial action at this time because Plaintiffs' residences will not face "imminent harm" until 2015–2020. (*Federal Defs.' Mem. of P. & A.* at 9:17–18.) However, Plaintiffs need not show that they face imminent hardship. See Union Carbide, 473 U.S. at 581 ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." (internal quotation marks omitted) (quoting Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 143 (1974))). The erosion has already undermined the lateral support of a pool located on Plaintiff SLPR's property, and the Federal Defendants do not dispute the fact that continued erosion will result in the eventual loss of Plaintiffs' homes. (SAC ¶ 25.) Accordingly, Plaintiffs have alleged both concrete and "certainly impending" injuries.

The judicial record is also fit for review. The central issue raised by Plaintiffs' complaint concerns whether the Federal Defendants complied with the consistency provisions of the CZMA. (SAC ¶¶ 85, 97.) The Federal Defendants do not dispute

1  that the dredging activities and concomitant consistency determinations constitute
2  "final agency actions." The Federal Defendants nevertheless argue that review is
3  premature, because the Navy is currently preparing a new Supplemental Environmental
4  Impact Statement ("SEIS") that will not be completed until 2009. (*Federal Defs.' Mem.*
5  *of P. & A.* at 10:5–8; See *Id.* at Ex. A.)  However, Plaintiffs challenge the original
6  consistency determinations conducted in connection with the 1998 and 2002 dredging
7  activities, and point to the December 2000 report prepared by the Army Corps as
8  evidence that the dredging activity violated the CZMA and the CCA. (SAC ¶¶ 85, 97.)
9  Plaintiffs' complaint does not present an "abstract disagreement[] over administrative
10 policies." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), superseded by statute on
11 other grounds, 28 U.S.C. § 1331, Pub. L. No. 94–574, 90 Stat. 2721, as recognized in
12 Califano v. Sanders, 430 U.S. 99, 105 (1977). Rather, Plaintiffs seek injunctive relief
13 remedying a situation created by past final agency actions.  (SAC ¶¶ 89, 98.)
14 Accordingly, the Court finds the judicial record fit for review and requiring of no further
15 factual development.

16        The Federal Defendants also claim that the only remedy Plaintiffs could obtain
17 would consist of the preparation of a new SEIS, and that this process is currently
18 ongoing. (*Federal Defs.' Mem. of P. & A.* at 9:23–25.) As Plaintiffs correctly observe,
19 if the Federal Defendants could unilaterally render Plaintiffs' claims not ripe simply by
20 repeating the SEIS process, then Plaintiffs may never have the opportunity to fully
21 litigate their claims. *(Pl.'s Opp'n to the Federal Defs.' Mot. to Dismiss* at 14:5–7.) This
22 argument addresses the redressability of Plaintiffs' claims, an issue the Federal
23 Defendants do not directly challenge in their Motion to Dismiss.  (See *Federal Defs.'*
24 *Mem. of P. & A.* at 4 n.5 (reserving the right to challenge Plaintiffs' Article III
25 standing).) Because Plaintiffs' claims meet both prongs of the prudential ripeness
26 analysis, the Court is satisfied that Plaintiffs' complaint states a claim for which relief
27 may be granted.
28

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Port District's motion to dismiss, and **DENIES** the Federal Defendants' motion to dismiss.

**IT IS SO ORDERED.**

DATED: June 30, 2008

_____
Hon. Thomas J. Whelan
United States District Judge