# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLPR, LLC, et al.,<br><br>                       Plaintiffs,<br><br>  vs.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, and UNITED STATES NAVY,<br><br>                       Defendants. | CASE NO. 06 CV 1327 MMA (POR)<br><br>**ORDER DENYING PLAINTIFF SLPR'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT ACOE'S CROSS-MOTION FOR SUMMARY JUDGMENT ON SIXTH CAUSE OF ACTION**<br><br>[Docket Nos. 305 & 318] |

This case arises under the Administrative Procedures Act ("APA"). 5 U.S.C. § 706. After extensive litigation on a wide-range of issues surrounding dredging of the San Diego Bay and the erosion of the Coronado shoreline, two of the parties seek to resolve one aspect of the case. Now before the Court are cross-motions for summary judgment on the sixth cause of action. In that claim, Plaintiff SLPR, LLC, the owner of a residential property on the shoreline in Coronado, challenges the administrative decision by the Defendant United States Army Corps of Engineers ("ACOE") on SLPR's application for a "repair and protection" permit in an emergency situation. The Court took the cross-motions under submission without oral argument. As set forth below, the Court **DENIES** SLPR's motion and **GRANTS** Defendant's cross motion because the ACOE did not arbitrarily deny SLPR permission to build a new seawall when it issued an emergency permit to repair and upgrade the existing barrier made of rip rap (*i.e.*, a pile of concrete rubble).

## I. BACKGROUND

SLPR owns a house at 407 First Street. In approximately 2003, SLPR installed a rip rap barrier to protect the bayfront property from erosion. USA-019886 & 019919. SLPR noticed the barrier was eroding and attributed the damage to dredging operations. SLPR filed its application for an emergency permit in late October 2005.[1] *Id.* 019883 to 019884 (dated Oct. 25, 2005, received Nov. 2, 2005). SLPR sought permission to build an "effective barrier" between the property (including a swimming pool) and the dredging. *Id.* at 019885 & 019886.

SLPR's structural engineering firm, Orion, provided a professional opinion that "without the construction of a sea barrier wall, the subject property will sustain damage from further retreat of the shoreline." *Id.* at 019890; *id* at 019943-44 (Algert, a civil engineering firm, observed accelerated erosion threatening backyard, fence, pool, basement, and foundation of house). The sea wall would be two feet wide and thirteen feet long. Orion's seawall was "the most appropriate design" because it was "the least destructive to the existing improvements," provided "the most secure buffer against future erosion," and reduced the size of any "exposed concrete footing." *Id.* at 019890.

SLPR estimated the project would cost $100,000. *Id.* at 019885. SLPR told the ACOE that the shoreline could be accessed from a neighboring vacant lot, but that easy access would be lost once the neighbor began construction. *Id.* at 019886. The neighbor had already applied for building permits, and once the neighbor started building the home, SLPR's engineer would have to build the seawall from a barge, which would greatly increase the cost. *Id.*; *id.* at 019914 (Dec. 2 letter informs ACOE that SLPR would lose access by land in mid-Jan. 2006, which would increase cost "something north of half a million dollars").

SLPR diligently sought action on the application. *E.g.*, id. at 019903 (Nov. 11

---

[1] SLPR mentioned that other neighbors might combine their projects, but the sixth cause of action concerns only SLPR's property.
SLPR also filed a damage claim with the San Diego Unified Port District. USA-019899; *see* Third Amended Compl. ¶ 7.

1  follow up letter refers to phone messages), *id.* at 019907 (same, dated Nov. 15).

2  On December 7, 2005, the ACOE inspected the site and confirmed that rocks from
3  the rip rap barrier "had fallen into the bay and there was some erosion" below it. *Id.* at
4  019919.  The ACOE discussed the various methods that SLPR could get permission for the
5  planned project, but cautioned that "ordinarily the Corps did not use RGP63 for new work
6  but only for the minimal amount of work necessary to remedy the emergency problem." *Id.*

7  SLPR continued to follow up with the ACOE.  *E.g.*, *id.* at 019922 (Dec. 22 letter);
8  *id.* at 019924 (Dec. 29 letter).

9  Ultimately, the ACOE granted in part and denied in part SLPR's application.  On
10 February 27, 2006, the ACOE "determined that replacing rock and grouting could be
11 accomplished under an RGP 63" and granted permission for SLPR to repair the existing
12 barrier.  *Id.* at 019936 ("APPROVED WORK:  Bank stabilization – Bulkhead"); *id*. at
13 019937 ("The Corps has determined that due to some erosion at the toe of the riprap that an
14 RGP 63 may be appropriate to allow [SLPR] to replace the rock and then possibly grout the
15 toe and the rock."); *id.* at 019948 ("After careful review, the Corps is hereby authorizing
16 only the replacement of any eroded riprap and underlying substrate and filter cloth with the
17 addition of grouted riprap as needed to remedy the erosion that is occurring underneath the
18 riprap.").  The ACOE denied SLPR's proposal to build a thirteen foot seawall.  The ACOE
19 advised SLPR would need a standard permit to build a new seawall.  *Id.* at 019948.  In
20 regard to such a permit, the ACOE informed SLPR that it needed a diagram of the cross-
21 section of the proposed seawall.  *Id.*

22 SLPR did not start the approved work because it believed it would not solve the
23 problem and was a short-sighted yet expensive band-aid.  *Id.* at 019952 (Mar. 14, 2006
24 letter); *id.* at 019956-57 (Mar. 17, 2006); *id.* at 019964 (Mar. 27 letter stating "I have
25 spoken with engineers again, and simply to dump concrete in or to try to use the rip rap
26 they tell me is simply ineffectual and is simply a waste of money.").

27 The ACOE reiterated its view that the RGP 63 authorized the minimum work for a
28 short term solution of repairing and grouting the existing rip rap barrier, but that a long

term solution, such as a new seawall, would require an individual permit. *Id.* at 019966. The ACOE again asked for the cross-section diagram so that it could "expeditiously process a Standard Individual permit." *Id.* ("Please submit this information as soon as possible as it is delaying the processing of your application for your long term solution."); *id.* at 01977 (Apr. 6, 2006 email states drawing in file is "inadequate" and requests submission of the two drawings needed); *id.* at 019979 (Sept. 7, 2006 letter gives SLPR thirty days to submit the requested information or the ACOE would withdraw the individual permit application).

SLPR filed this action in 2006. After a significant amount of litigation, the parties involved in the sixth cause of action seek a determination on the merits.

## II. DISCUSSION

### A. STANDARD OF REVIEW[2]

Under the APA, the Court determines whether the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205-06 (9th Cir. 2004).

To fulfill its obligations, the Court must conduct a "thorough, probing, in-depth review" of the administrative record.[3] *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." *Id.* at 416.

The Court reviews whether the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference

---

[2]A motion for summary judgment is an appropriate vehicle to review an administrative action even though the Court does not use the standard of review in Federal Rule of Civil Procedure 56. *Friends of Endangered Species, Inc. v. Jantzen*, 589 F. Supp. 113, 118 (N.D. Cal. 1984); *accord Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995).

[3]The Court denies the various requests to supplement the administrative record because the existing record is sufficient to conduct judicial review.

in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 105 (1983) (whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made").

Courts should "defer to an agency's scientific or technical expertise." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005); *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 384 F.3d 1163, 1177-78 (9th Cir. 2004) (when technical question is complex and qualified scientists disagree, court must give "substantial deference" to agency's judgment) (citing *Baltimore Gas*, 462 U.S. at 103).

An agency's "interpretation of its own regulation is entitled to deference." *Akiak Native Cmty. v. U.S. EPA*, 625 F.3d 1162, 1167 (9th Cir. 2010); *Northwest Envtl. Defense Ctr. v. Brown*, 617 F.3d 1176, 1180 (9th Cir. 2010) (deference not afforded when "that interpretation is plainly erroneous, inconsistent with the regulation, or based on an impermissible construction of the governing statute").

### B. REGIONAL GENERAL PERMIT NUMBER 63

The "emergency permit" procedure under the Clean Water Act, 33 U.S.C. § 1344, is set forth in a regulation known as Regional General Permit number 63 ("RGP 63") for "repair and protection activities in emergency situations." USA-01965. "This permit authorizes discharges of dredged or fill material into Waters of the United States . . . for necessary repair and protection measures associated with an emergency situation." *Id.* The regulation defines an "emergency situation" as "a clear, sudden, unexpected, and imminent threat to life or property demanding immediate action to prevent or mitigate loss of, or damage to, life, health, property or essential public services (i.e., a situation that could potentially result in an unacceptable hazard to life or a significant loss of property if corrective action requiring a permit is not undertaken immediately)." *Id.* "Any work authorized by this RGP must be the minimum necessary to alleviate the immediate emergency, unless complete reconstruction only results in very minor additional impact to

1 aquatic resources and logistical concerns indicate such reconstruction is as expedient
2 considering the condition of the project site and is limited to in-kind replacement or
3 refurbishment." *Id.* at 019868. "Moderate upgrading would be considered if the applicant
4 wishes to use bioremediation or other environmentally sensitive solutions." *Id.* However,
5 "[t]he RGP may NOT be used to upgrade an existing structure to current standards when
6 that activity would result in additional adverse effects on aquatic resources, except in very
7 unusual and limited circumstances." *Id.* "Such upgrade projects are considered separate
8 activities for which other forms of authorization will be required." *Id.* For example, an
9 individual permit.

### C. ANALYSIS

SLPR argues that the proposed seawall was a necessary protective measure to alleviate the immediate emergency of erosion that jeopardized the fence, pool, and foundation of the shoreline property. SLPR contends the existing rip rap barrier was not preventing erosion, thus ACOE's temporary solution to reinforce the same barrier was inadequate. Witnesses reported the rate of erosion was accelerating. Yet the ACOE refused permission to construct a seawall that would fully protect the property.

The Court rejects SLPR's argument. The ACOE, in its expertise, offered SLPR a rational solution in two steps. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d at 798; *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 384 F.3d at 1177-78. The ACOE properly construed the plain language of the regulation to permit the *repair* of the existing rip rap barrier under the emergency provision, but to direct SLPR to apply for a standard permit for the construction of *new* seawall. USA-019868 (¶ 3); *Akiak*, 625 F.3d at 1167. The record shows that the ACOE tried to help SLPR quickly obtain a standard permit for the new seawall, but that SLPR failed to provide the necessary diagram for the ACOE to process that application concurrently so that the projects could be completed before the neighbor built his house on the vacant lot. Despite repeated requests for specific information, SLPR did not provide the details necessary for the ACOE to evaluate the environmental impacts of the proposed

1 thirteen-foot seawall.

2     SLPR attacks the ACOE's decision by relying its own expert opinions that it needed
3 a seawall. These amount to a difference of opinion, but that is insufficient to overturn an
4 agency's technical expertise. *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 384
5 F.3d at 1177-78 ("The United States Supreme Court has held that '[w]hen specialists
6 express conflicting views an agency must have discretion to rely on the reasonable opinions
7 of its own qualified experts even if, as an original matter, a court might find contrary views
8 more persuasive.") (quoting *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378
9 (1989)). Importantly, the ACOE offered SLPR a complete solution, it simply required
10 SLPR to pursue a standard individual permit to build a new seawall. The ACOE had
11 cautioned SLPR about the limited scope of the emergency permit process when it inspected
12 the site in December 2005. USA-019919. The Court discerns no error in the ACOE's
13 exercise of judgment.

14                               **CONCLUSION**

15     Upon due consideration of the parties' memoranda and exhibits, a thorough review
16 of the administrative record, and for the reasons set forth above, the Court **DENIES**
17 Plaintiff SLPR, LLC's motion for summary judgment on the sixth cause of action [# 305],
18 and **GRANTS** Defendant United States Army Corp of Engineer's cross-motion for
19 summary judgment on the sixth cause of action. [# 318]

20     **IT IS SO ORDERED.**

21

22 Dated: March 17, 2011                  /s/ Michael M. Anello
23                                     Hon. Michael M. Anello
                                    United States District Judge